## BOLAND v. THOMPSON.[1]

*(Circuit Court, S. D. New York. February 18, 1886.)*

1. PATENTS FOR INVENTIONS—VOID REISSUE.

    The first claim of reissued letters patent No. 9,586, granted to Claude N. Boland, February 22, 1881, for an improvement in glove sewing machines, is void; such claim not being found in the original, the application having been filed two years, two months, and eight days from the date of the original, and the rights of the public having intervened.

2. SAME—EXCUSE FOR DELAY IN APPLYING FOR REISSUE.

    The patentee was a foreigner, unfamiliar with the English language, and was ignorant that the claim in controversy had been omitted from the original patent until a fortnight before the application for the reissue. *Held,* that these facts were not sufficient to excuse the delay.

3. SAME—RIGHTS OF THE PUBLIC—DUTY OF THE COURTS.

    To every patent the public is an indirect party. It is for the advantage of the whole people that all meritorious inventions shall be protected; but it is clearly the duty of the courts to see to it that the public is not required to pay tribute for that which may be fairly considered as abandoned by the inventor.

4. SAME—REMEDY FOR REJECTION BY PATENT-OFFICE, APPEAL, NOT REISSUE.

    The claim in controversy was presented in the original application and twice rejected. The applicant knew of the rejection, and his solicitors acquiesced in such ruling. *Held,* that the proper course to secure the claim was to appeal, and that there was no such inadvertence, accident, or mistake as entitled the patentee to a reissue.

In Equity.

*James A. Whitney,* for complainant.

*W. H. L. Lee* and *B. F. Lee,* for defendant.

COXE, J. This is an equity action founded upon reissued letters patent No. 9,586, granted to Claude M. Boland, February 22, 1881, for an improvement in glove sewing machines. The original letters patent, No. 202,695, were dated April 23, 1878. The application for the reissue was filed July 1, 1880, two years, two months, and eight days from the date of the original. The invention consists in substituting, as a support for the outer feed disk, a bent arm, projecting from the upper part of the casing of the machine, for the upright or curved column resting upon the extended base of the casing; the advantage being that a free space is thus left beneath the disks, permitting material of any size to be sewed upon the machine. The original contained four claims. The reissue contains five. The four claims of the original are substantially repeated in the reissue, and a new one added. It is this new claim, the first of the reissue, which alone is in controversy. It is in the following words:

"(1) In a sewing-machine, the combination of two feed disks, D, D¹, arranged in horizontal position and in contact, and a bent arm, D², which suspends and serves as a journal for the outer disk, whereby a free space is left beneath the latter, as shown and described."

The specification attached to the original application, filed by the inventor, September 22, 1877, contained a claim similar to the one just quoted. It is in these words:

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

"(1) In a glove sewing machine, the combination of an intermittently revolving feed-disk, with a second feed-disk, forming frictional contact therewith, and turning on the end of a curved supporting arm arranged, above the feed-disks, to leave a free space below the same, substantially as and for the purpose set forth."

This claim was rejected by the examiner on the fifteenth of November, 1877, upon reference to the Polmateer patent of November 23, 1875, and a few days thereafter it was amended, and again presented as follows:

"(1) The feed-disks, D, D¹, arranged with respect to the remainder of machine, and their curved support, D², to leave a subjacent space for handling the work, as shown and described."

The claim, as amended, was again rejected on the twentieth of November, 1877, the reference being the same. The complainant knew of the action of the examiner in this respect, and wrote to his solicitors on the seventh of December, 1877, reiterating the demand that the first claim referred to should be retained. He also had frequent consultations with them through an interpreter. The first claim of the reissue had therefore been the matter of discussion between the complainant and his solicitors, and between the solicitors and the officials of the patent-office. It had been deliberately rejected, and the ruling was acquiesced in by the solicitors, December 14, 1877. In the spring of 1880 the defendant commenced the sale of the infringing machines. Besides the defendant's, other rights intervened; the arrangement of the feed-disks being shown in English and American letters patent granted to Wollenberg and Priesner, the latter being dated August 6, 1878. The complainant, on discovering that he could not maintain a suit against the defendant upon his original patent, promptly applied for a reissue.

Upon these facts, can the reissue be sustained? The impression obtained on the argument was that the complainant had made a meritorious invention, and the record has been examined with care to discover, if possible, some theory upon which the patent can be lawfully upheld; but it is thought that there is no way of fairly distinguishing the case in hand from the well-known adjudications upon this subject. No proposition can be advanced in support of the reissue that does not find an apt and ready answer in the language of the courts. Every avenue of escape is closed. Among many authorities, the following have been selected as particularly applicable and decisive of the questions involved: *Wollensak* v. *Reiher*, 115 U. S. 96; S. C. 5 Sup. Ct. Rep. 1137; *Coon* v. *Wilson*, 113 U. S. 268; S. C. 5 Sup. Ct. Rep. 537; *Mahn* v. *Harwood*, 112 U. S. 355; S. C. 5 Sup. Ct. Rep. 174; *Leggett* v. *Avery*, 101 U. S. 256; *Miller* v. *Brass Co.*, 104 U. S. 350; *New York Belting & Packing Co.* v. *Sibley*, 15 Fed. Rep. 386; *Arnheim* v. *Finster*, 24 Fed. Rep. 276; *In re Hatchman*, 26 O. G. 738.

Great stress is laid upon the fact that the complainant is a Frenchman, and unfamiliar with the English language. He was, it is said,

ignorant that the claim in dispute had been finally omitted until a fortnight before the application for the reissue. Should such excuses be accepted by the courts? These questions must be determined upon broad and general principles. The march of the law cannot be arrested or diverted from the broad and traveled highway, to deal specially with each isolated and peculiar transaction. No two cases are precisely similar, and the rule should not be changed because of slight variations upon the facts. Ignorance of domestic law is never an excuse, nor is ignorance of fact, when it is traceable to the culpable negligence of the party who seeks relief. Were it otherwise, inadvertence and mistake would be synonymous with willful and intentional neglect. To hold that the complainant's failure to understand our language exonerates him, would lead logically to the conclusion that a patent might legally be reissued to a foreigner which would be held invalid if reissued, in like circumstances, to an American. There was enough in this case—far more than ordinarily appears—to put the complainant on his guard; to induce him, at least, to have his patent read, and, if need be, explained, in order that he might ascertain the full extent of the government grant to him. Instead of pursuing this obviously prudent course, he waited supinely for over two years, and now, when other rights have intervened, he answers the charge of laches by saying that he did not know what his patent contained. The law will not permit him to do this. To every patent the public is an indirect party. It is for the advantage of the whole people that all meritorious inventions shall be protected, but it is clearly the duty of the courts to see to it that the public is not required to pay tribute for that which may be fairly considered as abandoned by the inventor.

But, irrespective of the question of laches, *Leggett* v. *Avery, Arnheim* v. *Finster, In re Hatchman, New York Belting & Packing Co.* v. *Sibley, Mahn* v. *Harwood, supra,* and *Shepard* v. *Carrigan,* 6 Sup. Ct. Rep. 493, (Sup. Court, February 1, 1886,) are authorities for the proposition that when a claim has been examined and rejected by the commissioner, the rejection acquiesced in by the patentee, or his solicitor, and the patent reissued without the claim, there is no inadvertence, accident, or mistake which entitles the patentee to a reissue. His remedy is by appeal.

The bill is dismissed.